# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

CHRISTOPHER FARROW,
    *Plaintiff*,

v.

LT. MARTINEZ, *et al.*,
    *Defendants*.

No. 3:16-cv-00333 (JAM)

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Christopher Farrow filed this lawsuit after he was subject to discipline for threatening a prison counselor. Plaintiff claims that the counselor falsely charged him with threatening her in retaliation for his having filed a complaint against her. Plaintiff further claims that three more correctional officials violated his due process rights during the subsequent disciplinary hearing against him. Defendants have now filed an unopposed motion for summary judgment, and I will grant defendants' motion on the basis of their showing that no genuine fact issues remain for trial.

### BACKGROUND

The facts set forth below are drawn from defendants' submissions that are based in the record and that have not been contradicted by plaintiff. *See* D. Conn. L. Civ. R. 56(a)(1). At the time of the events giving rise to this case, plaintiff was a pretrial detainee at the New Haven Correctional Center. Defendant Chanessa Bent was the counselor in plaintiff's housing unit. Bent's duties included assisting inmates with legal calls, property, visitation, classification issues, and inmate requests.

On the afternoon of February 17, 2015, Bent was in her office, which was connected to the housing unit. Another inmate was in the office completing a legal call. Bent heard someone

1

knocking on her door. She opened the door so that the inmate who had been making the legal call could leave. Plaintiff was standing outside the door. He asked Bent for an inmate account statement. Bent denied the request because plaintiff had not submitted a request for the printout. Plaintiff was not permitted to be in Bent's office or in that corridor of the housing unit, absent a request from Bent.

As Bent was closing the door, plaintiff began pushing on the door to keep it open. Bent was able to close the door but could not lock it because plaintiff was applying pressure to the door. Bent reopened the door to order plaintiff to leave the area and return to his cell. Plaintiff was acting aggressively and shouted, "I go to seg for fucking up bitches like you. I won't be in jail forever." Doc. #43-3 at 3. Interpreting plaintiff's actions and statement as a physical threat to her safety, Bent called a unit officer who ordered plaintiff to go into the day room.

Bent issued plaintiff a disciplinary report for threats. Plaintiff received a copy of the disciplinary report that day. Prior to this incident, Bent was not aware that plaintiff had filed any grievances. Bent had also permitted plaintiff to make additional legal calls beyond the two calls permitted in the month.

Defendant Freddy Martinez was the disciplinary hearing officer assigned to plaintiff's charge. His practice prior to each hearing was to review all hearing paperwork provided by the disciplinary investigator and watch any relevant video recordings. During any hearing, Martinez would have the disciplinary investigator read aloud the disciplinary report, the inmate's statement, any witness statements, and the disciplinary investigator's report. If the inmate had an advocate, the advocate would read aloud the advocate's statement and any witness statements collected by the advocate. Martinez would then ask the inmate whether he pleaded guilty or not guilty. If the inmate pleaded not guilty, the inmate would be permitted to speak on his own

behalf. Martinez would then make a finding based on the evidence and tell the inmate the finding, the basis for the finding, and, if the inmate was found guilty, the sanctions imposed. The inmate would then be told that he had fifteen days to appeal the decision to the district administrator.

Plaintiff's disciplinary hearing was held on February 25, 2015. Plaintiff declined the services of an advocate. He requested and received a written statement from an inmate witness. Prior to the hearing, Martinez reviewed all of the evidence. The disciplinary investigator read the evidence aloud at the hearing, and plaintiff presented his defense.

The evidence consisted of four written statements and an investigator's report. Plaintiff's statement contained his version of events. In his statement, plaintiff claimed that Bent denied him access to his prisoner account statement, and he threatened to sue or report her to a superior. He further stated that Bent called him a snitch, and he retreated with his hands raised. Plaintiff denied threatening Bent. A fellow inmate drafted a statement narrating a similar version of the incident.

The evidence also included the disciplinary report submitted by Bent wherein she described how plaintiff tried to enter her office and uttered the threatening remark to her. A correctional officer submitted a statement that he heard plaintiff become "irate" when Bent refused to speak with him and went to the corridor adjacent to Bent's office to retrieve plaintiff and return him to the day room. Doc. #43-6 at 16. The investigator's report noted that plaintiff threatened Bent and that the "verbal statement caused fear in the reporting employee." *Id.* at 11.

Martinez found plaintiff guilty and sanctioned him with fifteen days in punitive segregation, fifteen days confined to quarters, and sixty days loss of phone privileges. The guilty finding was based on "staff observation and documentation." *Id.* at 19. Martinez further noted

3

that "[t]he inmate verbal statement caused fear in the staff member." *Ibid.* Plaintiff received a copy of the disciplinary process summary report the same day.

Defendant Peter Murphy reviewed plaintiff's disciplinary appeal and determined that there was no evidence to support his claims. Defendant Angel Quiros also reviewed the disciplinary appeal and found that the hearing officer's finding was reasonable based on the information and evidence presented at the hearing. Both Murphy and Quiros denied the disciplinary appeals.

## DISCUSSION

The principles governing the Court's review of a motion for summary judgment are well established. Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). I must view the facts in the light most favorable to the party who opposes the motion for summary judgment and then decide if those facts would be enough—if eventually proved at trial—to allow a reasonable jury to decide the case in favor of the opposing party. My role at summary judgment is not to judge the credibility of witnesses or to resolve close contested issues but solely to decide if there are enough facts that remain in dispute to warrant a trial. *See generally Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (*per curiam*); *Pollard v. New York Methodist Hosp.*, 861 F.3d 374, 378 (2d Cir. 2017).

On June 23, 2016, the Court issued an initial review order allowing the case to proceed on a retaliation claim against defendant Bent and denial of due process claims against defendants Martinez, Murphy, and Quiros. Defendants have now filed a motion for summary judgment. Plaintiff has not filed any objection or opposition to defendant's motion for summary judgment. In *Jackson v. Federal Express*, 766 F.3d 189 (2d Cir. 2014), the Second Circuit instructed that

"when a party, whether *pro se* or counseled, fails to respond to an opponent's motion for summary judgment, a district court may not enter a default judgment," but "must examine the movant's statement of undisputed facts and the proffered record support and determine whether the movant is entitled to summary judgment." *Id*. at 197.

### *Retaliation*

Plaintiff alleges that Bent issued a false disciplinary report because he had filed grievances against her. He alleges that Bent called him a snitch and issued a false disciplinary report because he had complained to a supervisor that Bent had denied him a legal call.

To establish a First Amendment retaliation claim, plaintiff must demonstrate "(1) protected speech or conduct, (2) adverse action by defendant, and (3) a causal connection between the protected speech and the adverse action." *Bilal v. White*, 494 F. App'x 143, 146 (2d Cir. 2012) (citing *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009)). Even if plaintiff presents evidence satisfying each element, "a defendant may avoid liability by showing that he 'would have disciplined the plaintiff even in the absence of the protected conduct.'" *Ibid.* (quoting *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)).

Plaintiff has not established a causal connection between the allegedly adverse action taken by Bent and plaintiff's protected activity, because there is no evidence that Bent knew of any prior grievances. Bent testified that she was not aware that plaintiff had filed any grievances against her—a fact deemed admitted in the absence of any opposition filed by plaintiff. Docs. #43-2 at 2; #43-3 at 4. Moreover, even assuming that Bent knew about any of plaintiff's prior grievances, she had a proper, non-retaliatory reason for issuing the report: the deemed-admitted fact that plaintiff indeed made a threatening statement to her. Docs. #43-2 at 2; #43-3 at 3, 7. Plaintiff's menacing statements were more than sufficient grounds to issue a disciplinary report.

5

Accordingly, defendants' motion for summary judgment is granted as to the retaliation claim against Bent.

*Due Process*

Plaintiff next alleges that defendants Martinez, Murphy, and Quiros denied him due process in connection with the disciplinary hearing on the threats charge. The Due Process Clause protects pretrial detainees from punishment without due process of law. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Benjamin v. Fraser*, 264 F.3d 175, 188-89 (2d Cir. 2001).[1] Before defendants were permitted to impose punishment, plaintiff was entitled to due process protections, including written notice of the charges, adequate time to prepare a defense, a fair and impartial hearing officer, a written statement of the reasons for the action taken and the evidence relied upon, and a limited ability to present witnesses and evidence at the hearing. *See Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974); *Benjamin*, 264 F.3d at 190.

Plaintiff received notice of the charge against him on the same day the incident occurred. Doc. #43-3 at 7. The notice detailed the facts underlying the allegation against plaintiff. The disciplinary hearing was held on February 25, which allowed plaintiff eight days to prepare for the hearing. Doc. #43-6 at 3. This constitutes more than ample notice and time to prepare a defense.

Plaintiff also received a fair and impartial hearing. Martinez reviewed all of the documentation that was submitted relevant to the investigation, including plaintiff's statement, plaintiff's witness's statement, Bent's statement, and a statement from another correctional

---

[1] Ordinarily, a sentenced prisoner is not accorded due process protections from prison discipline unless the change in the prisoner's conditions of confinement constitutes an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. 472, 484 (1995). The Second Circuit has concluded that *Sandin* is inapplicable to pretrial detainees, whose liberty interests have not been diminished by a criminal conviction and sentence of imprisonment. *Benjamin*, 264 F.3d at 189.

6

officer. *Id.* at 4. At the disciplinary hearing, the disciplinary investigator read aloud the contents of the documentation. *Id.* at 3.

Plaintiff alleges that Martinez refused to watch the video of the incident, and Martinez does not recall whether he watched the video before adjudicating plaintiff's matter. Even if Martinez did not watch the video, it would have been of little value because the video did not have audio, and the basis for discipline against plaintiff was his verbal threat. *See Fiore v. Medina*, 2012 WL 4767143, at *13 (S.D.N.Y. 2012) ("[A] disciplinary hearing officer's decision not to review video evidence does not constitute a denial of sufficient process, particularly when the video could not have been exculpatory."). No reasonable jury could conclude that plaintiff did not receive a fair and impartial hearing.

After the hearing, plaintiff received a written summary of the disciplinary proceeding explaining the finding of guilt. The due process requirement that plaintiff receive a written statement of reasons for the determination is satisfied if the statement explains what evidence supported the ruling. *See Sira v. Morton*, 380 F.3d 57, 74 (2d Cir. 2004). The statement should be reasonably specific as to the evidence relied upon such that the inmate can identify which evidence the hearing officer relied upon to support his finding. *See, e.g.*, *Friedland v. Otero*, 2014 WL 1247992, at *7-8 (D. Conn. 2014) (fact question whether hearing officer's statement of reasons identifying "documentation submitted" was sufficiently specific for plaintiff to identify evidence relied upon in reaching determination). In determining whether the statement is sufficiently specific, a court should look at the nature of the offense and the quality and quantity of evidence presented at the hearing. *See Davidson v. Capuano*, 1988 WL 68189, at *12-13 (S.D.N.Y. 1988), *aff'd*, 895 F.2d 1410 (2d Cir. 1989).

The written summary plaintiff received after the hearing sufficiently identified the evidence Martinez relied upon to support his finding of guilt. The written summary stated, in relevant part, "The inmate pleads not guilty at the hearing and stated he never threatened the staff. Inmate was found guilty by the [disciplinary hearing officer] based on staff observation and documentation. The inmate verbal statement caused fear in the staff member." Doc. #43-6 at 19. Only Bent's report stated that plaintiff made a threat. In the context of this kind of "he-said-she-said" matter of whether plaintiff uttered a threat to Bent, Martinez's written statement plainly indicates that he credited the statement of Bent, who is the "staff" that was threatened and also observed and documented the incident. No reasonable jury could conclude that his written statement did not identify the evidence he relied upon—Bent's report—in adjudicating plaintiff guilty of threatening Bent. All in all, plaintiff's disciplinary proceeding was not constitutionally infirm. Accordingly, defendants' motion for summary judgment is granted as to the due process claim against defendant Martinez.

Plaintiff also claims that Murphy and Quiros violated due process by affirming Martinez's disciplinary decision. These claims, however, are predicated upon an underlying due process violation by the hearing officer in the first instance. *See, e.g.*, *Johnson v. Coombe*, 156 F. Supp. 2d 273, 278 (S.D.N.Y. 2001) (noting act of affirming appeal constituted sufficient personal involvement in a procedurally defective hearing to state a due process claim). Given that plaintiff received a constitutionally sound hearing, plaintiff's claims against Quiros and Murphy are without merit.

## CONCLUSION

Defendants' motion for summary judgment (Doc. #43) is GRANTED. The Clerk is directed to enter judgment in favor of the defendants and close this case.

It is so ordered.

Dated at New Haven this 27th day of December 2017.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge